UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCHINDLER ELEVATOR CORP., : | |
| Plaintiff, : | |
| -vs- : | Hon. Dennis M. Cavanaugh |
| : | Civil Action No. 09-cv-560 (DMC) |
| OTIS ELEVATOR CO., : | |
| Defendant, : | |
| : | OPINION |
| OTIS ELEVATOR CO., : | |
| Counterclaim Plaintiff, : | |
| -vs- : | |
| SCHINDLER ELEVATOR CORP. and : | |
| SCHINDLER AUFZÜGE AG, : | |
| Counterclaim Defendants. : | |

**FALK, U.S.M.J.**

The issue to be decided is whether a party seeking to take a deposition of a Swiss corporate defendant must comply with the Hague Convention or may it simply follow the Federal Rules of Civil Procedure. Defendant/Counterclaim Plaintiff Otis Elevator ("Otis") noticed a deposition of Counterclaim Defendant Schindler Aufzüge AG ("Schindler Aufzüge"), a Swiss corporation, in accordance with the Federal Rules of Civil Procedure. Schindler Aufzüge insists that Otis must follow the procedures of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Convention") 23 U.S.T. 2555, reprinted in 28 U.S.C. § 1781. For the

reasons that follow, Otis may proceed with the deposition of Schindler Aufzüge pursuant to the Federal Rules.

**BACKGROUND**

This action began as a declaratory judgment action by Schindler Elevator Corporation ("Schindler"), alleging that United States Patent No. 6,739,433 ("the '433 patent") is invalid. Otis owns the '433 patent, which is directed to a tension member for an elevator.

On May 14, 2009, Otis was granted leave to file an amended answer and counterclaim joining Schindler Aufzüge as a counterclaim defendant. Schindler Aufzüge is a Swiss entity with its principal place of business in Switzerland.[1] Otis alleges that Schindler and Schindler Aufzüge directly infringe the '433 patent through their manufacturing, use, and sale of certain elevator belt products, including the Gates Tension Member ("the Gates Tension Member"). Otis alleges that Schindler Aufzüge has sold and used the Gates Tension Member in Europe and that Schindler intends to use the Gates Tension Member or similar products in the United States. Otis further alleges that Schindler Aufzüge has imported, or has assisted in importing, the Gates Tension Member into the United States, and that Schindler Aufzüge directs Schindler's research and development efforts related to the intended use and sale of the Gates Tension Member.

On June 10, 2009, an amended scheduling order was entered that authorized Schindler Aufzüge to file a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), and permitted expedited discovery relating to the issue of personal jurisdiction over Schindler Aufzüge. Schindler Aufzüge's jurisdiction motion was filed on June 26, 2009.

---

[1] Schindler and Schindler Aufzüge are subsidiaries of the same parent company, Schindler Holding AG.

Supporting the motion is a certification from Berhard Gysi (the "Gysi Declaration"), a Senior Vice President with Schindler Aufzüge, which details Aufzüge's business relationship with Schindler and its alleged absence of contacts with the State of New Jersey.  The Gysi declaration is cited approximately 50 times in Schindler Aufzüge's brief in support of dismissal.

Beginning jurisdictional discovery, Otis noticed a 30(b)(6) deposition of Schindler Aufzüge. The subject of the deposition is the substance of the Gysi Declaration.  In response, Schindler Aufzüge refused to produce a witness unless Otis utilized the procedures in the Hague Convention. Otis raised the dispute with the Court, and the parties submitted papers in support of their positions. The matter is ripe for decision.

## DISCUSSION

**A.     The Parties' Arguments**

In opposing the deposition, Schindler Aufzüge argues that it has been unwillingly "dragged" into this case and has not voluntarily invoked any discovery procedures under the Federal Rules.  It further argues that binding case law that permits the use of the Federal Rules only applies to document discovery, not depositions.  Aufzüge also argues that there will be little or no delay in this case because depositions in Switzerland taken pursuant to the Hague Convention are generally completed in less than six months.  Schindler Aufzüge further argues that two sections of the Swiss Penal Code prohibit the deposition and subject the deponent to criminal prosecution.  Finally, Aufzüge implores the Court to demonstrate "the respect for the special situation of foreign litigants seeking to rightfully invoke the Hague Convention procedures." (Aufzüge's Letter at 14.)

Otis argues that the Federal Rules should govern its discovery demands.  It cautions that it is doubtful a deposition taken in accordance with the Convention will produce adequate evidence.

3

Otis further argues that it is fundamentally unfair for Schindler Aufzüge to premise its jurisdiction motion on a declaration and then refuse to allow Otis to explore its potent conclusions through a question and answer deposition. Otis states that proceeding according to the Convention will lead to unreasonable delay. Finally, Otis alleges that Schindler Aufzüge is in no danger of violating Swiss penal laws because the deposition will not occur in Switzerland and because Aufzüge has placed its own purported confidential information at issue in the case through the Gysi Declaration.

**B.      Hague Convention or Federal Rules**

The Hague Convention "prescribes certain procedures by which a judicial authority in one contracting nation may request evidence located in another nation." In re Automotive Refinishing Paint Antitrust Litig., 358 F.3d 288, 299 (3d Cir. 2004). The Convention is not mandatory and serves only as a permissive supplement to the Federal Rules of Civil Procedure. See Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa, 482 U.S. 522, 536 (1987). When discovery is sought from a foreign party, there is no rule of "first resort," compelling the discovering party to attempt to utilize the Convention's procedures before resorting to the Federal Rules. See Automotive Refinishing, 358 F.3d at 300. As such, the Federal Rules remain the "*normal* method[] for federal litigation involving foreign national parties" unless the facts of a given case indicate "the 'optional' or 'supplemental' Convention procedures prove to be conducive to discovery." Id. at 300 (quoting Societe Nationale, 482 U.S. at 536) (emphasis added). This principle applies equally to cases in which personal jurisdiction has been established and to those in which it remains in dispute. See id.[2] In order to compel application of the Hague Convention over the

---

[2] Although Schindler Aufzüge disputes that it is subject to personal jurisdiction in this District, this Court has jurisdiction over Aufzüge "to the extent necessary to determine whether or not [it is] subject to personal jurisdiction in this forum . . . ." Automotive Refinishing, 358 F.3d at

4

Federal Rules, the party seeking to apply the Convention procedures bears the burden to show that the "particular facts, sovereign interests, and likelihood [of resorting to Hague procedures] will prove effective." Id. at 300, 305. In evaluating whether to require resort to the Convention, courts should be mindful of "unnecessary, or unduly burdensome, discovery" that may place foreign litigants in a disadvantageous position. Id.

**C.     Analysis**

It is within this Court's discretion to determine the appropriate discovery method to employ in a case of this type. See Societe Nationale, 482 U.S. at 538; see generally 8 Wright, Miller & Marcus, Federal Practice and Procedure § 2005.1 (2d ed. 2004). Schindler Aufzüge bears the burden to show the Convention procedures should be used in this case based upon the specific facts and sovereign interests involved. Automotive Furnishing, 358 F.3d at 300, 305. After considering the relevant factors, and being especially sensitive to the special situation of a foreign litigant and the laws of its home country, the Court is not persuaded that the Hague Convention should be followed in this case.

**1.     Depositions of Foreign Parties**

Schindler Aufzüge first argues -- without citation to any authority -- that depositions of foreign nationals are different than document discovery and require a different analysis than established by the Supreme Court in Societe Nationale. However, numerous courts -- both before and after Societe Nationale -- have concluded that the analysis is the same and ordered depositions of foreign parties occur in the United States in accordance with the Federal Rules. See, e.g., Calixto

---

302; see also In re Vitamins Antitrust Litig., 120 F. Supp. 2d 45, 49 (D.D.C 2000) ("It is well-established that a trial court has jurisdiction to determine its jurisdiction.").

v. Watson Bowman Acme Corp., No. 07-60077, 2008 WL 4487679, at *3 (S.D. Fla. Sept. 29, 2008) (Swiss resident ordered to appear for deposition pursuant to the Federal Rules); Int'l Ins. Co. v. Caja Nacional De Ahorro Y Seguro, No. 00-6703, 2004 WL 555618 (N.D. Ill. Mar. 18, 2004) (deposition of representative of Argentine entity to occur in the United States); Triple Crown Am., Inc. v. Biosynth AG, No. 96-7476, 1998 WL 227886, at *4 (E.D. Pa. Apr. 30, 1998) (ordering depositions of Swiss corporation's agents occur in Pennsylvania); Ward THG, Inc. v. Swiss Reinsurance Co., No. 96-8100, 1997 WL 83294, at *1 (S.D.N.Y. Feb. 27, 1997) (depositions of Swiss nationals to occur in the United States); In re Honda Am. Motor Co. Dealership Relations Litig., 168 F.R.D. 535, 540 (D. Md. 1996) (ordering deposition of Japanese defendant in Maryland); M&C Corp. v. Erwin Behr GmbH & Co., KG, 165 F.R.D. 65 (E.D. Mich. 1996) (denying motion for protective order and requiring officers of German corporation to submit to deposition in Detroit); Roberts v. Heim, 130 F.R.D. 430 (N.D. Cal. 1990) (ordering that deposition of Swiss national proceed in San Francisco); Work v. Bier, 106 F.R.D. 45, 56-57 (D.D.C. 1985) (depositions of German employees to occur in Washington).

   The only counter offered by Schindler Aufzüge is a footnote in Societe Nationale, which it claims requires that depositions proceed "via the Hague Convention." (Aufzüge's Letter at 5.) The referenced footnote simply repeats the Magistrate Judge's statement in that case that "*if* oral depositions were to be *taken in France*, he would require compliance with the Hague Evidence Convention." Id. at 526 n.7 (emphases added). This footnote is not pertinent because it speaks to depositions within the boundaries of a foreign country that is a signatory to the convention, and because it simply repeats a somewhat basic principle of law that articulated by courts before Societe Nationale was even decided. See Work, 106 F.R.D. at 48 (noting that "it seems clear that where

6

depositions of party witnesses are sought to be taken within the geographic boundaries of a State which is a party to the Hague Evidence Convention, such discovery must be in accord with the procedures required by that Convention, in order to protect the territorial sovereignty of that Nation").

Here, the deposition has been noticed for New Jersey. Thus, Societe Nationale's footnote dicta does not apply. There is no affront to Swiss sovereignty by virtue of a deposition in New Jersey or at some convenient location outside of Switzerland. See, e.g., In re Honda, 168 F.R.D. at 538 ("[I]f a federal court compels discovery on foreign soil, foreign judicial sovereignty may be infringed, but when depositions of foreign nationals are taken on American or neutral soil, courts have concluded that comity concerns are not implicated."). A deposition in accordance with the Federal Rules in the United States, or at some other convenient location outside of Switzerland, is expressly contemplated by Societe Nationale and its progeny and does not offend foreign judicial sovereignty.

### 2. Delay

Schindler Aufzüge next contends that a deposition in Switzerland could possibly be completed more quickly than one might assume. Schindler Aufzüge relies upon a questionnaire completed by Switzerland regarding the time necessary to complete Hague Convention depositions. This questionnaire indicates that depositions in Switzerland may, in some cases, be completed in less than two months. In response, Otis relies on a statement from the U.S. Embassy in Switzerland that provides in part:

> Voluntary depositions: Prior Swiss permission is required
> before consular officers can take voluntary depositions from
> any party, regardless of nationality. The permission must be

> obtained from the Swiss Department of Justice and police as follows: The requesting party must send an official Hague Convention letter of request to the appropriate Cantonal Central Authority requesting permission for a consular officer to take the deposition. The Central Authority will forward the request to the Swiss Federal Office for Police Matters. *After permission is granted, parties involved in taking the deposition (including the U.S. consular office) must schedule a mutually convenient time for the procedure. Unfortunately, space is very limited at the Embassy and the Consulate, which will make scheduling difficult.*

See http://bern.usembassy.gov/obtaing_evidence.html (emphasis added).

This court has an "'overriding interest' in the prompt and efficient resolution of litigation" before it. Triple Crown, 1998 WL 227886, at *3 (quoting Societe Nationale, 482 U.S. at 543). It is simply not possible to determine how long it would take to proceed with a deposition in Switzerland (or another foreign country) under the Hague Convention. It has been the experience of this and many other courts that utilization of Hague procedures are slow and cumbersome and usually take far longer than discovery procedures under the Federal Rules. See, e.g., Automotive Refinishing, 358 F.3d at 300 ("The Convention procedures are often unduly time-consuming and expensive, and less likely to produce needed evidence than direct use of the Federal Rules."); Triple Crown, 1998 WL 227886, at *3 ("it appears that it would be difficult if not impossible for plaintiff to secure depositions of Biosynth AG in Switzerland in a manner as prompt, efficient and effective as that contemplated by the Federal Rules of Civil Procedure"). Moreover, since the deposition is focused on the crucial threshold issue of jurisdiction, the jurisdictional deposition should be completed as soon as possible. Schindler Aufzüge's motion for dismissal is already pending before District Judge Cavanaugh, and the case is at something of a standstill while the jurisdictional issue

8

is resolved. The certainty of a prompt deposition under the Federal Rules, as compared to the likelihood of delay under the Convention, weighs in favor of applying the Federal Rules.

### 3. Adequacy of a Hague Deposition

Otis aptly observes that a "deposition" endorsed by the Hague Convention would not comport with the general procedures and practices of a deposition recognized by the Federal Rules. (Otis's Reply at 2-3.) A deposition in Switzerland would appear to involve a diplomatic officer, consular agent, and/or a person appointed by such authorities as a commissioner, who would take the deposition as a third-party. See Triple Crown, 1998 WL 227886, at *4 ("Defendant does not refute plaintiff's representations that any deposition in Switzerland in this case would be conducted in German by a judicial officer who would issue a report from handwritten notes, that the proceedings could not be transcribed by a party and that the ability of any Swiss attorney engaged by a party to pose questions to a deponent is not assured."). As the deposition might have to be taken by a third party, there is no guarantee that Otis would even be permitted to pose direct questions to the witness. See id.

The differences between the procedures applicable to a Convention deposition and those applicable to a general "question-and-answer" deposition under the Federal Rules raise legitimate concerns about the sufficiency of a Hague deposition and the specter of prejudice to Otis. See, e.g., In re Honda, 168 F.R.D. at 539 ("It would be patently unfair to constrain plaintiff's ability to discover facts necessary to make their case by allowing Honda Japan's managing agents be deposed in Japan pursuant to Japanese Rules.").

    **4.**    <u>**Swiss Penal Laws**</u>

As set forth below, there are Swiss penal statutes that, at first blush, appear to pose an obstacle to a non-Convention deposition. However, upon close examination, the Court is not persuaded that the Swiss laws prevent the deposition sought in this case, or that they apply at all.

Schindler Aufzüge first relies upon Article 271 of the Swiss penal code.[3] Article 271 does not apply unless the alleged act (e.g., the deposition) occurs "in Swiss territory." Article 271; cf. <u>Gerling Int'l Ins. Co. v. C.I.R.</u>, 839 F.2d 131, 136 (3d Cir. 1988) ("The IRS, however, was concerned that this might constitute a violation of Article 271 of the Swiss Penal Code, which forbids, without authorization, taking action on behalf of a foreign state or foreign party *within Switzerland*." (emphasis added)). Otis has not noticed the subject deposition to occur in Switzerland, and thus, Article 271 is not implicated. <u>See</u> <u>id.</u>

Schindler Aufzüge also relies upon Article 273 of the Swiss Penal Code. This section provides:

> **Art. 273 SPC, "Economic intelligence service"**
> Whoever seeks out a manufacturing or business secret in order to make it accessible to a foreign official agency, a foreign organization, a private enterprise, or their agents, shall be punished with imprisonment or, in serious cases, sentenced to the penitentiary. Furthermore, the judge may impose a fine.

---

[3] Article 271 provides:

"Prohibited acts for a foreign state"
1. Whoever, without being authorized, performs acts for a foreign state on Swiss territory that are reserved to an authority or official,
whoever performs such acts for a foreign party or another foreign organization,
whoever aids and abets such acts,
shall be punished with imprisonment and, in serious cases, sentenced to the penitentiary.

Schweizerisches Strafgesetzbuch [StGB], Code pénal suisse [CP], Codice pénal svizzero [CP] [Penal Code] Decl. 21, 1937, SR 311.0, art. 271 (Switz.) ("Article 271").

Schweizerisches Strafgesetzbuch [StGB], Code pénal suisse [CP], Codice pénal svizzero [CP] [Penal Code] Decl. 21, 1937, SR 311.0, art. 273 (Switz.) ("Article 273").

Schindler Aufzüge argues that Article 273 applies regardless of whether the deposition occurs in or outside of Switzerland.  In addition, in order to show that Article 273 "ha[s] teeth," Schindler Aufzüge cites to a declaration prepared by Swiss Professor Isabelle Romy[4] and filed in a unrelated case in federal court in Florida.[5]  This declaration states, in pertinent part, that:

> The Swiss Federal Office for Statistics reports 26 cases from 1984 through 2007 in which the defendant was convicted for violating Article 273.  In the most prominent of these cases, to which I have referred in the previous section . . ., a UBS employee and a former UBS employee were sentenced to 48 and 27 months of imprisonment, respectively for violation of Article 273 SPC and Article 47 BA.

(Romy Decl., ¶ 32.)  While this Court does not question the expertise of Professor Romy, her declaration has no bearing on the present issue.  The UBS matter involved dramatically different facts and issues unrelated to discovery in general federal civil litigation.  Thus, not surprisingly, the declaration provides no information on the number of prosecutions (if any) that resulted from a Swiss national's compliance with a federal court's discovery order.  In fact, underscoring this point,

---

[4] Professor Romy is an Associate Professor at the University of Fribourg (Switzerland).  Her curriculum vitae, which is attached to her declaration, also reflects that she is a partner in a law firm in Zurich and former Deputy Judge at the Swiss Federal Supreme Court.

[5] Professor Romy's declaration was not prepared for Schindler Aufzüge for use in this or any other case.  Rather, it was prepared on behalf of UBS AG in the case captioned United States of America v. UBS AG, 1:09-CV-20423 (S.D. Fla.).  That case involved the efforts of the United States to enforce an IRS subpoena served on UBS AG.  The UBS case has gained notoriety due to a recent settlement through which UBS AG has agreed to turn over the names of certain U.S. Taxpayers who maintained bank accounts in Switzerland --- despite Swiss secrecy laws.  See Lynnley Browning, Names Deal Cracks Swiss Bank Secrecy, N.Y. Times, August 20, 2009, available at http://www.nytimes.com/2009/08/20/business/global/20ubs.html.  The UBS case is not applicable here except, perhaps, to show that Swiss secrecy laws are not sacrosanct.

during her deposition in the Florida action, Professor Romy was unable to identify a single individual prosecuted for complying with the orders of a United States court. (Otis's Reply at 3-4; Ex. 3.)

Schindler Aufzüge's reliance on Article 273 is unavailing for other reasons. First, Article 273 is not dispositive of whether this Court may authorize discovery under the Federal Rules. See Soceiete Nationale, 482 U.S. at 544 n.9 (foreign statutes prohibiting discovery do not bind American courts).

Second, Article 273 speaks of "manufacturing or business secrets." Article 273. Schindler Aufzüge bears the burden to show that the information sought through Otis's deposition notice constitutes such protected information. See United States v. Vetco, Inc., 691 F.2d 1281, 1289 (9th Cir. 1981) ("The party relying on foreign law has the burden of showing that such law bars production."). No such showing has been made.

Third, Article 273 apparently does not "prohibit a person from divulging his *own* business affairs but only from divulging the business affairs of others without their consent." Roberts v. Heim, 130 F.R.D. 430, 436 (N.D. Cal. 1990) (emphasis added).[6] Thus, even if the testimony sought is actually related to "business or trade secrets" within the contemplation of Article 273, which has not been shown, Schindler Aufzüge can appear for a deposition without fear of prosecution under Article 273 because the information is Aufzüge's *own* business information. See id.

Fourth, the Court's own research suggests that Article 273 is truly "meant to protect Swiss sovereignty and the Swiss economy from foreign espionage." Alfadda v. Fenn, 149 F.R.D. 28, 32

---

[6] See also Martin P. Henrich, Obtaining Evidence in Switzerland [--] The Dilemma and the Stumbling Blocks of Art. 271 and Art. 273 Swiss Penal Code at 62 (noting that a Swiss company may produce its own business information despite Article 273 under the theory "the Swiss company [is] the master of its own secrets"), available at the Swiss-American Chamber of Commerce website, http://www.amcham.ch/publications/downloads/2009/obtaining_evidence_in_switzerland.pdf

12

(S.D.N.Y. 1993). Indeed, prosecutions under Article 273 appear limited to cases where Swiss National interests are actually endangered by disclosure. See, e.g., id. (citing Minpeco, S.A. v. Conticommodity Services, Inc., 116 F.R.D. 517, 524 (S.D.N.Y. 1987)). To the Court's knowledge, no such secrets are at issue here.

Finally, the deposition Otis seeks is directed toward the jurisdictional information in the Gysi Declaration that Aufzüge submitted to the Court. If such information is truly "manufacturing or business secrets," then it is unclear how Schindler Aufzüge was able to disclose the information in the first place without violating Article 273. If the information is not business secrets, then the information is not protected information under Article 273. Either way, Aufzüge cannot voluntarily disclose such information publicly and then contend a deposition regarding the same information is precluded by Article 273.[7]

### 5. Fairness and Waiver

The primary purpose of Otis's deposition request is to probe the substance of the Gysi Declaration. In that declaration, Mr. Gysi specifically volunteers that "**if called as a witness, I could and would testify competently**." (Gysi Decl., ¶ 2) (emphases added). This Court believes the filing of Mr. Gysi's declaration **in this Court**, in connection with a motion **brought under the Federal Rules**, waives any objection that Mr. Gysi may otherwise have to a question-and-answer deposition in this case. See Adams v. Unione Mediterranea Di Scurta, No. 94-1954, 2002 WL 472252, at *4

---

[7] The threat of prosecution argument is further defused because this would not be the first time a Schindler AG subsidiary has appeared for a deposition in the United States. In Schindler Elevator Corp. & Inventio AG v. Otis Elevator Corp., No. 06-05477 (S.D.N.Y.), Otis deposed, in New York, two Swiss citizens affiliated with another subsidiary of Aufzüge's parent company. Although Aufzüge argues the situation is different because the subsidiary in the New York action was the plaintiff, as opposed to a counterclaim defendant, it provides no authority for that position.

(E.D. La. Mar. 28, 2002) (holding, in the context of affidavit submitted by foreign national in support of motion to dismiss for lack of personal jurisdiction, that "UMS cannot rely on Giovanni's affidavit, yet refuse to produce him, one of its own managers, for a deposition").

## CONCLUSION

In sum, this Court concludes that Schindler Aufzüge has failed to establish that the facts of this case warrant application of the Hague procedures; has failed to establish that sufficient evidence can be had through a foreign deposition; has failed to establish that Hague Convention procedures would result in the quick and efficient deposition contemplated by this Court; and has failed to establish that it is restricted from appearing for this deposition by the Swiss penal laws relied upon. Accordingly, this Court finds that it is appropriate for Otis to proceed with a deposition under the Federal Rules of Civil Procedure. An appropriate Order accompanies this Opinion.

      /s/   Mark Falk
**MARK FALK**
**United States Magistrate Judge**

Dated: September 24, 2009