**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCHINDLER ELEVATOR CORP.,<br><br>        Plaintiff,<br><br>v.<br><br>OTIS ELEVATOR CO.,<br><br>        Defendant.<br> <br>OTIS ELEVATOR CO.,<br><br>        Counterclaim Plaintiff,<br><br>v.<br><br>SCHINDLER ELEVATOR CORP. and<br>SCHINDLER AUFZÜGE AG,<br><br>        Counterclaim Defendants. | **Hon. Dennis M. Cavanaugh**<br><br>**REPORT AND RECOMMENDATION**<br><br>Civil Action No. 09-cv-0560 (DMC) |

JOSEPH A. DICKSON, U.S.M.J.:

This matter comes before the Court to set or recommend sanctions against Schindler Aufzüge AG ("Aufzüge") for its willful failure to obey this Court's Order dated October 26, 2010 (10/26/10 Order, ECF No. 142) (the "Order"). Oral argument was heard on December 21, 2010 and the parties thereafter briefed the issues.

## I.     PRELIMINARY STATEMENT

The problems presented by Aufzüge's conduct appear at first blush to pose a difficult issue. Upon reflection, however, the solution flows easily from the choices made by Aufzüge.

Schindler Elevator Corp. ("Schindler") sued Otis Elevator Co. ("Otis") claiming Otis's patent for a flat belt used to raise elevators is invalid. Otis counterclaimed that Schindler's flat

1

belt technology infringes Otis's patent. Furthermore, Otis sued Aufzüge, a Swiss sister company of Schindler, alleging that Aufzüge induced Schindler to infringe Otis's patent by supplying technical expertise. As the parties began to engage in discovery, Otis sought documents and discovery from Schindler regarding the development of Schindler's belts and facts related to secondary considerations that Otis wanted to elicit to defend its patents. Schindler claimed not to have the discovery, but suggested that perhaps Aufzüge had such discovery. Aufzüge resisted providing the discovery and, ultimately, it was ordered to produce the discovery.

Aufzüge, however, <u>chose</u> to willfully disobey the Court's Order compelling its production of discovery. It did not choose to appeal; it did not choose to move for reconsideration. It chose simply to inform the Court it would not comply. It stated, among other reasons, that it could not produce the discovery because Swiss law would not permit it to do so. But that excuse had been rejected three previous times, once in a published Opinion in this matter. Aufzüge never chose to appeal <u>any</u> of those decisions or to move for reconsideration.

When it appeared on December 21, 2010 to respond to the Court's Order to Show Cause why it should not be sanctioned, Aufzüge's counsel moved to withdraw. The Court denied the motion without prejudice to give Aufzüge an opportunity to obtain new counsel. It chose not to do so.

Now, Schindler argues that, whatever happens to Aufzüge, its sins should not be visited upon Schindler. A fair enough argument under some circumstances, but, if accepted here, Otis, a truly innocent party in this conflagration of events, would be left holding the proverbial bag, which would be empty.

Should Aufzüge be permitted to defend itself further in this lawsuit? Aufzüge has chosen not to engage in discovery. It has chosen not to replace its counsel. It cannot proceed without

counsel, and it cannot be allowed to direct its present counsel, who now seeks to withdraw, to refuse to comply with Orders of the Court.  Quite simply, Aufzüge has made its own bed, and that bed is outside the rights and obligations it has enjoyed to date as a party in Federal litigation. Default must be entered against it.[1]

What about the lack of discovery?  Without some meaningful relief granted to Otis, it is impossible to imagine how the prejudice to it can be overcome.  Accordingly, Aufzüge's choices will necessarily redound to the detriment of its sister, Schindler.  Some accommodation must be made to Otis.  Merely defaulting Aufzüge provides no remedy to Otis in connection with its efforts to obtain at least some of the discovery regarding the belt Schindler wants to use and which Otis alleges is infringing.  Moreover, without some remedy, how does Otis have a meaningful opportunity to advance its arguments on secondary considerations in its defense of the validity of its belt?

The answer is simple -- the Court must attempt to level the playing field so that Otis will have a fair opportunity to make its case, while providing Schindler some opportunity to rebut Otis's arguments.  To do this, the Court will switch the burden of proof on the secondary considerations.  This Court, as stated below, therefore, recommends that the secondary considerations are presumed (not taken as fact) subject to rebuttal with evidence available to both Otis and Schindler.  Schindler, to some degree, will be burdened by the choices made by its sister corporation.

Accordingly, for the reasons stated more specifically below, the Court respectfully recommends that if Aufzüge does not produce all documents required by the Order within twenty

---

[1] Judgment by default should be deferred pending the ultimate resolution of the remainder of the case.  See Section III. A., infra.

(20) days of the effective date of the District Court's order accepting and approving the Recommendations contained herein:

      (1)    Default be entered against Aufzüge precluding Aufzüge's further defense.

      (2)    The following facts be presumed established subject to rebuttal by Schindler with evidence and/or documents in the possession of <u>all</u> parties:

      a.    Aufzüge copied Otis's invention claimed in U.S. Patent No. 6,739,433, as embodied in the Otis Gen2 elevator belts with specification numbers AAA717P1, AAA717W1, and/or AAA717R1, in order to develop the Gates Tension Member (including the Gates tension member with specification number LL MV 90-07) to lift an elevator car in an elevator system.

      b.    The elevator systems using belts sold by Aufzüge and other Schindler European affiliates are commercially successful due to their use of the belts claimed in the '433 patent instead of round ropes to provide lifting force to the elevator car.

      c.    Aufzüge tried and failed to design alternatives to the '433 patent inventions, including failing to design elevator belts with alternative cord configurations and failing to develop non-belted elevator systems that compete with belted elevator systems.

## II.    BACKGROUND

### A.  PROCEDURAL HISTORY

On December 23, 2008, Schindler filed the present action seeking a declaration that Otis Elevator '433 Patent is invalid. The '433 Patent covers flat belts for use in lifting elevator cars. The patent teaches the use of flat belts instead of round ropes for tension members, as using ropes has a number of drawbacks.

Otis filed its answer and a counterclaim on January 22, 2009, alleging that Schindler infringed the '433 Patent. In its counterclaim, Otis alleges that Schindler and Aufzüge directly

and indirectly infringed the '433 Patent.[2]  On June 26, 2009, Aufzüge moved to dismiss Otis's claims pursuant to FED. R. CIV. P. 12(b)(2) and/or 12(b)(6).  The District Court denied Aufzüge's motion on March 16, 2010.

In March 2010, Otis served Aufzüge with discovery requests seeking documents relating to Otis's claim against Aufzüge for inducement of patent infringement, Otis's claim against Schindler for patent infringement, and secondary considerations of non-obviousness (which are directly relevant to Schindler's claims of obviousness).  On April 15, 2010, Magistrate Judge Mark Falk signed an Order extending the discovery end date and - because Aufzüge had not responded to Otis's discovery demands - requiring Aufzüge to "indicate within a reasonable time when they reasonably expect to provide [Aufzüge's] document production."  (4/15/10 Order, ¶ 1, ECF No. 107)

On or about April 21, 2010, Aufzüge responded to Otis's document requests not by serving documents, but by stating that Otis should narrow the document requests.  The parties subsequently met and conferred to attempt to resolve Aufzüge's objections to Otis's document demands.  Notwithstanding, Aufzüge maintained its position that Otis's requests were overly broad and not related to Otis's claims against Aufzüge and, therefore, Aufzüge refused to produce any documents.

On June 2, 2010, Magistrate Judge Falk scheduled an all-day in-person conference on June 18, 2010 to discuss the outstanding discovery issues, which presumably included Aufzüge's failure to provide adequate document responses.

On June 15, 2010, that conference was rescheduled upon the request of Schindler for July 1, 2010.  On June 28, 2010, Aufzüge filed a motion for a protective order.  In response, Otis

---

[2] The Counterclaim was amended on 5/14/09 and 12/29/10.  In the 5/14/09 Amendment, Otis withdrew its claims against Aufzüge for direct infringement, but maintained its claims for inducement of infringement.

filed a cross-motion to compel discovery. After briefing, this Court held a conference on September 9, 2010 during which the Court directed Otis to serve Aufzüge with a revised list of ten (10) document requests. The Court also directed Aufzüge to produce all responsive documents to the revised requests within one (1) week of service of the revised demands. On or about September 23, 2010, Otis served Aufzüge with a revised list of ten (10) document demands. On October 1, 2010, Aufzüge objected to all of Otis's revised document demands, stating that they were "overly broad and irrelevant" and, therefore, it "cannot respond to these unreasonable discovery requests."

On October 26, 2010, after having reviewed the parties' submissions, and for good cause, this Court entered an Order compelling Aufzüge to produce documents responsive to seven (7) of Otis's ten (10) revised document demands. (10/26/10 Order, ECF No. 142). In the Order, the Court addressed Aufzüge's repeated objection that Otis's demands were not directly related to Otis's claims against Aufzüge, but were related to Otis's defenses and claims against Schindler, and emphasized that under the FED. R. CIV. P. 26(b)(1), the parties may obtain discovery relating to "any party's claim or defense." *Id.* at 3.

Notwithstanding the clear and express language of the Order, by letter dated November 29, 2010, Aufzüge informed the Court that it refused to produce any documents in response to the seven (7) document demands.[3] (10/29/10 Aufzüge Lr., ECF No. 172-12). Aufzüge never moved the Court to reconsider its decision, nor did it appeal the Court's decision.

Accordingly, on December 2, 2011, this Court *sua sponte* issued an Order to Show Cause why Aufzüge and/or its counsel should not be subject to sanctions and/or a contempt order for the willful failure to comply with the Order. On December 10, 2010, counsel for Aufzüge – the

---

[3] Aufzüge repeats for each of the seven requests that it "will not produce documents in response to Otis's Revised Document Request." Accordingly, it is clear that Aufzüge intends to never produce these documents.

same counsel who represented and continues to represent Schindler – moved to withdraw as counsel for Aufzüge only.  In support of its motion, Aufzüge's counsel stated that it and Aufzüge had "reached fundamental disagreements on issues pertaining to Aufzüge's participation in discovery." (Br. in Support of Motion to Withdraw 1, ECF No. 160)  The parties subsequently briefed the issues raised in the Order to Show Cause and oral argument was heard on December 21, 2010.

At the hearing, the Court declined to hold counsel for Aufzüge in contempt, but found that Aufzüge willfully violated the Order and should be sanctioned.  The Court declared that it would recommend that default[4] be entered against Aufzüge and that Otis should be reimbursed reasonable attorneys fees as a result of Aufzüge's failure to comply with its discovery obligations.[5]  Otis argued that the Court also should take as established certain facts – namely, secondary considerations of non-obviousness - it argued would be found in the discovery willfully and wrongfully withheld by Aufzüge.  The Court asked for and received additional briefing from each of the parties, including both Schindler and Aufzüge, which continued to be represented by the same counsel.

In order to properly analyze Otis's requests, it is necessary to understand the claims in this lawsuit and the nature of the discovery sought by Otis.

---

[4] At the hearing the Court used the term "default judgment," but in the context of the claims Otis has brought against Aufzüge in relation to the claims between Schindler and Otis, default judgment is inappropriate.

[5] The Court will issue a separate Order regarding the imposition attorneys' fees.

**B.     FACTS APPLICABLE TO THIS DISPUTE**[6]

1.     Background

Aufzüge is an entity formed under the laws of Switzerland, having a principal place of business in Ebikon, Switzerland. (Aufzüge Brief in Support of Motion to Dismiss 2, ECF No. 55). Aufzüge is a wholly-owned subsidiary of Schindler Holding AG. Schindler is a Delaware corporation with its principal place of business in Morristown, New Jersey. *Id.* Schindler is a subsidiary of Schindler Enterprises Inc., a Delaware corporation, which is a wholly-owned subsidiary of Schindler Holding AG. *Id.* The companies, then, are indirectly affiliated in that they both are subsidiaries of Schindler Holding AG. *Id.* at 1-2. Aufzüge states, however, that although the companies are affiliated, Aufzüge and Schindler are separate entities that maintain independent financial records. *Id.* Neither company owns or controls the stock of the other. *Id.* at 3. Aufzüge does not realize any profits or losses based on Schindler's revenues or expenditures. *Id.* Aufzüge is not involved in creating or approving Schindler's budgets, and has no control over Schindler's resources. *Id.*

Schindler maintains its own research and development ("R&D") department. *Id.* Aufzüge is, however, involved in selecting Schindler's director of R&D—this fact notwithstanding, Aufzüge asserts that it is not involved in the approval of Schindler projects. *Id.*

2.     The allegations concerning the development of competing elevator belts

Aufzüge developed the Gates LLMV 90-07 Tension Member (the "Gates Tension Member") in Switzerland. *Id.* In 2003, Schindler began investigating alternate suspension systems for the North American market. *Id.* at 4. Schindler imported Gates Tension Members into the U.S. from Schindler, S.A., located in Zaragoza, Spain and Schindler Elettronica, S.A.,

---

[6] The facts in the Background section are taken from the District Court's March 16, 2010 Opinion finding that Aufzüge is subject to the Court's jurisdiction (3/16/10 Opinion, ECF No. 98) and the parties' briefs on Aufzüge's motion to dismiss (ECF Nos. 55 and 70).

located in Locarno, Switzerland. *Id.* Aufzüge has not provided Schindler with any Gates Tension Members or any other belt with similar steel configurations, and has not imported any Gates Tension Members, or any similar steel wire configurations, into the U.S. *Id.* Schindler has installed an elevator system designed for the European market having a prefabricated alternate suspension system at a Pennsylvania facility, and has installed Gates Tension Members at its New Jersey facility. *Id.* Aufzüge asserts that it did not direct or manage either installation. *Id.* Aufzüge and Schindler share general information through telephone calls and visits. *Id.* Aufzüge, however, asserts that personnel have not visited Schindler specifically in connection with the Gates Tension Member or any other belt with similar steel wire configurations. *Id.*

Otis's characterization of Aufzüge's role in Schindler's activities is substantially different. Otis, relying on the testimony of Schindler personnel, asserts that Aufzüge's influence is more pervasive than as portrayed by Aufzüge. For example, Otis suggests that the two companies' personnel work together extensively, as evidenced by the inter-company workshops and meetings. (Otis Brief in Opposition to Motion to Dismiss 7-8, ECF No. 70) As described by a Schindler employee, "Schindler Aufzüge is an entity in Switzerland providing guidance, and there is a direct flow of information and a feedback process between [Schindler] and Aufzüge." *Id.* at 16. Otis suggests that this "guidance" was such that Schindler required the "agreement" of various Aufzüge engineers before making product decisions, so as to "ensure that globally [Schindler is] working within certain boundaries, if you will, certain norms, standards, that have to be met." *Id.* at 13. Moreover, it is not uncommon for Aufzüge employees to work at the Schindler facilities for extended periods of time. *Id.* Contact between the two companies does not appear to be limited to isolated occurrences. A Schindler employee, for example, described the visitations by Aufzüge employees by stating that "[t]here are a number of people that are

floating in and out." *Id.* at 7. In short, Otis's description of the Aufzüge/Schindler relationship suggests that Aufzüge plays a significant role in Schindler activities, particularly with respect to R&D.

Otis asserts that after it introduced its patented belted elevator system, Schindler knew that it was at a competitive disadvantage because it "had no belts." (Otis Brief on Proposed Sanctions 3, ECF No. 173)   Otis further asserts that Aufzüge was responsible for the development of the core design for belts used by all the Schindler companies in their elevator systems. *Id.* Schindler relied on Aufzüge to develop the belts for elevator systems in the U.S. *Id.* Aufzüge employee Ernst Ach was the "lead engineer on belts." *Id.* Aufzüge then launched its elevator system using belts in Europe in 2005, five years after Otis's Gen2 launch. *Id.* at 4. After Aufzüge designed and built the accused elevator belts, it sold them in Europe for years. *Id.* Then Schindler tested them in the United States. *Id.*

## C.   THE SCOPE OF THE SANCTIONS

Pursuant to FED. R. CIV. P. 37(2)(A), the Court may issue sanctions for failure of a party to obey an order to provide discovery. RULE 37 provides examples of the types of sanctions that can be imposed, including:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

> (iii) striking pleadings in whole or in part;

> (iv) staying further proceedings until the order is obeyed;

> (v) dismissing the action or proceeding in whole or in part;

> (vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

FED. R. CIV. P. 37(b)(2)(A)(i)-(vii).  The Court may also order the party, its counsel, or both to pay the costs and fees caused by their failure to obey the discovery order. RULE 37(b)(2)(C). Furthermore, these examples of sanctions are not exhaustive, and the Court may impose "other appropriate sanctions" that it deems appropriate. *See generally* FED. R. CIV. P. 37; *see also Sunkett v. Misci*, 183 F. Supp. 2d 691, 704-05 (D.N.J. 2002).

## III.   ANALYSIS

Here, Otis asks the Court - in addition to entering default against Aufzüge – to find as established the following secondary considerations of non-obviousness: copying, commercial success, and failure of others.

## A.   ENTRY OF DEFAULT AGAINST AUFZÜGE

The Third Circuit applies a six-factor test to determine whether a party's failure to comply with a discovery order warrants an extreme discovery sanction, such as a default judgment. *Curtis T. Bedwell & Sons, Inc. v. International Fidelity Ins. Co.*, 843 F.2d 683, 691 (3d Cir. 1988) (citing *Poulis v. State Farm Fire and Casualty*, 747 F.2d 863 (3d Cir. 1984)). These factors include "(1) the extent of the *party's* personal *responsibility*; (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith*; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions*; and (6) the *meritoriousness* of the claim or defense." *Poulis*, 747 F.2d at 868.  Each of the six factors need not be present to permit entry of default. *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 919 (3d Cir. 1992).

Furthermore, when considering the effectiveness of other sanctions, the court must "specifically consider the range of permissible sanctions and explain why less severe alternatives to the sanction imposed are inadequate or inappropriate." *Republic of Philippines,* 43 F.3d 65, 74 (3d Cir. 1994). A basic tenet is "that sanctions should always be narrowly tailored to meet the misconduct, and should entail no greater punishment than is reasonably necessary to address the specific wrongdoing that confronts the court." *Bartos v. Pennsylvania,* No. 08-366, 2010 WL 1816674, at *6 (M.D. Pa. May 5, 2010) (citing *Klein v. Stahl, GMHB & Co. Maschinefabrik,* 185 F.3d 98 (3d Cir. 1999)).

### 1.   The extent of the party's personal responsibility

"[I]n determining whether dismissal is appropriate, [the court] look[s] to whether the party bears personal responsibility for the action or inaction [leading] to the dismissal." *Adams v. Trustees of the N.J. Brewery Employees' Pension Trust Fund,* 29 F.3d 863, 873 (3d Cir. 1994). A finding that a party, and not solely its counsel, is responsible for a discovery violation will weigh in favor of default or dismissal. *Bedwell & Sons,* 843 F.2d at 692. In the instant case, it appears that Aufzüge is directly and solely responsible for its willful refusal to comply with the Order. There is no evidence in the record nor any suggestion by opposing counsel that Aufzüge's counsel was in any way responsible for Aufzüge's failure to provide discovery. To the contrary, the record demonstrates that Aufzüge is personally responsible for its non-compliance, which is highlighted by Aufzüge's counsel's motion to withdraw from the case in which it cites Aufzüge's lack of cooperation in connection with discovery. Furthermore, in response to the Court's direct question, counsel confirmed that the client directed counsel to refuse to comply with the Order:

> THE COURT: [W]as the signing of the letter, the Strook letter dated November 29, 2010 principally driven by the client?

MR. YANNEY: Yes.  And the substance of the arguments presented in there, again, without waiving the privilege, were issues that the client wished to have addressed to the Court.

(Transcript of 12/21/10 Hearing on Order to Show Cause 6:14-19, ECF No. 197).  Because there is sufficient evidence to determine that Aufzüge's refusal to produce discovery originated with Aufzüge, this factor supports default judgment in favor of Otis and against Aufzüge.

2.     The prejudice to the adversary caused by the failure to meet scheduling orders and <u>respond to discovery</u>

Under the second *Poulis* factor, the Court must examine the prejudice to the other parties caused by the disobedient party's inaction. *Chiarulli v. Taylor*, No. 08-4400, 2010 WL 1371944, at *3 (D.N.J. Mar. 31, 2010).  The Third Circuit has found severe prejudice where a party's failure to comply with discovery requests has deprived the requesting party of important information and forced the requesting party to expend costs in order to obtain court orders for the purpose of inducing the refusing party to produce discovery. *Bedwell,* 843 F.2d at 693.  A party also may be prejudiced if its "'ability to prepare effectively a full and complete trial strategy' is impeded." *Chiarulli,* 2010 WL 1371944, at *3 (quoting *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d cir. 2003)).  The existence of prejudice to the adversary "weighs heavily in favor of dismissal." *Id.*

Here, in response to Otis's discovery demands seeking information regarding secondary considerations of non-obviousness - necessary for Otis to defend against Schindler's claims - Schindler stated that it does not have responsive documents and that Aufzüge has them.  Furthermore, Schindler has demonstrated that there is a likelihood that the document held by Aufzüge will relate directly to these secondary considerations of non-obviousness.  Without them, therefore, Otis's' defense of Schindler's claims necessarily will be impaired.  However,

13

Aufzüge has refused to produce them. Accordingly, Aufzüge's refusal to comply with the Order significantly prejudices Otis because it will be unable to fully and adequately defend against Schindler's claims of obviousness.

### 3.    A history of dilatoriness

The "history of dilatoriness" factor of the *Poulis* test can be met when a party's conduct exceeds dilatoriness to the extent that it enters non-compliance; this non-compliance will "weigh heavily in favor of the entry of a default judgment." *Plumbers Union Local No. 690 v. F.P.S. Plumbing, Inc.*, No. 08-4271, 2009 WL 2591153, at *3 (E.D. Pa., Aug. 20, 2009) (citing *Schutter v. Herskowitz*, No. 07-3823, 2008 WL 2726921 (E.D. Pa., July 11, 2008). Here, as set forth above, Aufzüge has refused to produce responsive documents since April 2010. Furthermore, Aufzüge not only has violated the Order, but has indicated that it <u>never</u> will produce any documents responsive to the revised document demands. This is not a situation where a party is delaying production, but will eventually produce documents; <u>this is a case where a party has unilaterally refused outright to ever produce documents.</u>    This fact, in itself, demonstrates Aufzüge's dilatoriness. Indeed, although Aufzüge may technically have violated only one discovery order, Aufzüge has indicated that it will violate any subsequent order directing production of the requested documents; accordingly, any further orders would be futile and unnecessary.

### 4.    <u>Whether the conduct of the party or the attorney was willful or in bad faith</u>

The District of New Jersey has found the willfulness requirement of the *Poulis* test to be met where a party's conduct is intentional and not merely negligent or inadvertent. *Huertas v. Untied States Dep't. of Educ.*, No. 08-3959, 2010 WL 2771767, at *7-8 (D.N.J. July 12, 2010). In its November 29, 2010 letter, Aufzüge expressly refused to comply with the Order. Aufzüge

did not state that it could not produce the documents; rather, Aufzüge stated that it had unilaterally decided not to produce the documents.  This is a perfect example of bad faith.

In its brief, Aufzüge argues that it did not violate the Order in bad faith, but did so because complying with the Order would have required it to violate Swiss law. (Aufzüge Br. 5, ECF No. 182)  First, the Court has already dealt with this issue on at least three prior occasions and each time has rejected Aufzüge's position.  Second, Aufzüge never mentioned this purported concern in its November 29, 2010 letter.  Even if the Court had not previously ruled against Aufzüge three times on this issue, it does not accept this eleventh hour explanation.

5.   The effectiveness of less extreme sanctions

The Third Circuit has found less extreme sanctions inappropriate where a significant part of the responsibility for the failure to produce rests with the party rather than the party's attorney, where lesser sanctions have already been imposed, and where the disputed discovery related to virtually the entire case. *Bedwell & Sons*, 843 F.2d at 695-696.  Here, as stated above, Aufzüge, and not Aufzüge's counsel, is responsible for Aufzüge's violation of the Order.  Furthermore, the requested documents relate to the crux of the litigation -- they are directly relevant to Otis's demonstration of non-obviousness of its patent and, thus, are relevant to the validity or invalidity of the patent.

Moreover, the Court stated at the December 21, 2010 conference that it would sanction Aufzüge at least by way of granting a default and awarding Otis attorneys' fees in connection with its efforts to obtain the documents requested.  Notwithstanding that fact, Aufzüge has continued to violate the Order and has made no indication that it would at any time in the future produce the requested documents.  Accordingly, Aufzüge has made it clear that such sanctions will not be effective.

6. <u>Meritoriousness of the claim or defense</u>

Finally, the Court must determine whether Aufzüge's defenses are meritorious. A claim or defense is deemed meritorious "when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." *Poulis*, 747 F.2d at 870. Here, Otis has asserted a patent infringement claim against Aufzüge. Aufzüge has asserted a defense that it has not infringed, directly, contributorily, by inducement, or willfully any claim of Otis's' patent. Aufzüge has also asserted a defense that Otis's patent is invalid under 35 U.S.C. §§ 102, 103 or 112. While the Court is not in a position at this juncture to determine the validity of these claims and defenses at this time, if Aufzüge were able to prevail at trial, it would support a denial of recovery by Otis. Accordingly, this factor weighs against entering default against Aufzüge. However, the Court notes that one factor is not controlling and will not be dispositive of whether to impose sanctions in the form of default. *See Bedwell*, 843 F.2d at 696.

7. <u>Aufzüge's failure to obtain new counsel</u>

In addition, notwithstanding the Court's *Poulis* analysis, default should be entered against Aufzüge because Aufzüge has failed to obtain new counsel and, therefore, cannot proceed as a party in this matter.

On December 10, 2010, as a result of a fundamental disagreement between Aufzüge and its attorneys regarding discovery, Aufzüge's attorneys filed a motion to withdraw as counsel. Aufzüge did not oppose the motion. At the December 21, 2010 hearing, the Court addressed the motion to withdraw and asked Aufzüge's attorney if he knew whether Aufzüge was in the process of seeking other counsel. Aufzüge's attorney did not know. Accordingly, the Court withheld its decision on the motion to withdraw only to provide Aufzüge with time to obtain new counsel. The Court also ordered Aufzüge's attorney to advise the Court by January 11, 2011 of

the status of Aufzüge's search for new counsel. On or about January 11, 2011, Aufzüge's counsel notified the Court that Aufzüge had not yet obtained new counsel and provided little information regarding Aufzüge's search other than the fact that Aufzüge had contacted four different law firms without success. Despite Aufzüge's knowledge of its attorneys motion to withdraw since at least December 10, 2010 and its knowledge that the Court would not allow it to participate in this litigation without new counsel since at least December 21, 2010, to date, Aufzüge has not obtained new counsel. In addition, Aufzüge has failed to provide the Court with any update regarding the status of its search.

It is well settled that a corporation may not appear in federal without licensed counsel. *Rowland v. Cal. Men's Colony*, 506 U.S. 194 (1993); *Simbraw, Inc. v. U.S.*, 367 F.2d 373 (3d Cir. 1966). If a party continuously refuses to obtain counsel, the Court may impose default judgment under RULE 55. *See, e.g. Hoxworth*, 980 F.2d at 918 ("Nor do we doubt that the district court in this case could have imposed a default judgment against the defendants for failure to comply with its own unambiguous orders to obtain substitute counsel, file a pretrial memorandum, and respond to the plaintiffs' discovery requests."); *Harrington v. All American Plazas, Inc.*, No. 08-3848, 2010 WL 2710573 (D.N.J. July 7, 2010).

Accordingly, Aufzüge's failure for almost three months to obtain new counsel – or even to notify the Court of its continued efforts, if any, to obtain new counsel - as directed by the Court at the December 21, 2010 hearing constitutes additional grounds for default.[7]

---

[7] The Court is simultaneously granting Pierre R. Yanney, Esq. (and his firm, Strook & Strook & Lavan LLP) and Jeffery Brosemer, Esq.'s (and his firm, Brosemer, Kolefas & Associates, LLC) motion to withdraw as counsel for Aufzüge, effective on the twenty-first (21st) day after the effective date of the Court's order accepting and approving the Recommendations contained herein. If Aufzüge has a change of heart and produces the required discovery called for by the Order, the order granting the motion to withdraw shall be vacated.

8.    <u>Conclusion</u>

It was this Court's initial thought at the December 21, 2010 hearing that default <u>judgment</u> should be entered against Aufzüge.  Upon reflection, however, it is clear that default judgment would be premature.  Otis's case against Schindler is that it infringed Otis's patent.  The case against Aufzüge is that it induced infringement.  If the ultimate resolution is - by verdict, motion, or otherwise - that no infringement of Otis's patent occurred, then there should be no judgment for inducement of infringement.  In other words, the ultimate resolution of the Aufzüge portion of the case should logically follow from the disposition of the rest of the case.

Accordingly, based on the above analysis of the *Poulis* factors, together with Aufzüge's decision to not retain new counsel, this Court respectfully recommends that default be entered against Aufzüge if it does not produce full and complete responses to Otis's document requests within twenty (20) days of the effective date of the District Court's order accepting and approving the Recommendations contained herein.

## B.    TAKING FACTS AS ESTABLISHED

Otis argues that it needs the documents Aufzüge has refused to produce because they will allow Otis to demonstrate non-obviousness, in defense of Schindler's claims against Otis that its patent is invalid because it is obvious.

A party seeking to invalidate a patent pursuant to 35 § U.S.C. 103(a) must demonstrate obviousness by clear and convincing evidence. *Typeright Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1157 (Fed. Cir. 2004) (citing *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1326 (Fed. Cir. 2004).  "The obviousness determination turns on underlying factual inquiries involving: (1) the scope and content of prior art, (2) differences between claims and prior art, (3) the level of ordinary skill in pertinent art, and (4) secondary considerations such as commercial

success and satisfaction of a long-felt need." *Proctor & Gamble Co. v. Teva Pharms.*, 566 F.3d 989, 994 (Fed. Cir. 2009) (citing *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17 (1966)). In discussing the question of obviousness, the Supreme Court indicated that the Graham case "set forth a broad inquiry and invited courts, where appropriate, to look at any secondary considerations that would prove instructive." *KSR Intern, Co. v. Teleflex, Inc.*.550 U.S. 398, 415 (2007) (citing *Graham*, 383 U.S. at 17). "Indeed, evidence of secondary considerations may often be the most probative and cogent evidence in the record." *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1983).

Therefore, if a party challenging a patent established a prima facie case for obviousness, then the patent-holder can rebut this showing by presenting objective evidence of non-obviousness. *See, e.g., Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1345 (Fed. Cir. 2000). The "objective indicia" of non-obviousness, the 4th *Graham* factor, instructs courts to consider the circumstances surrounding the invention process, including, but not limited to (1) meeting a long-felt need, (2) the inventors' success despite the failure of others, (3) commercial success, (4) copying, (5) praise and recognition for the invention, (6) unexpected results, and (7) significant effort and serendipity. *See Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 660-62 (Fed. Cir. 2000); *See also Proctor & Gamble*, 566 F.3d at 994 (Fed. Cir. 2009); *Ortho-McNeil Pharm., Inc. v. Mylan Labs, Inc.*, 520 F.3d 1358, 1364 (Fed. Cir. 2008).

Otis argues that, although entering default against Aufzüge is an appropriate sanction, it is insufficient to remedy the prejudice imposed on Otis due to Aufzüge's failure to produce documents in response to Otis's document requests. Otis argues that even if it obtains judgment against Aufzüge for inducement of infringement, Otis, nonetheless, must still defend against Schindler's primary claim that Otis's '433 patent is invalid as obvious. In order to do so, Otis

argues that it intends to demonstrate the following secondary considerations of non-obviousness: copying, failure of others, and commercial success.  However, Otis states that Schindler has advised that it does not have any relevant information about belt design and that Aufzüge has the information.  Otis provides as example an interrogatory seeking a description of the design process for the Gates Tension Member, in response to which Schindler stated that Aufzüge was in possession of the requested information:

> Schindler was not involved in the development of the Gates Tension Member. However, it is Schindler's understanding that the Gates Tension Member was developed by Schindler Aufzüge in Switzerland. Accordingly, Schindler is not aware of the details of the development of the Gates Tension Member.

(Otis Br. 11, ECF No. 173)  Otis additionally provides examples of deposition testimony in which Schindler's employees repeatedly stated that Aufzüge possessed knowledge regarding the elevator belts. *Id.* at 4-5. This very information – along with the other information sought in the document requests - is directly relevant to Otis's defenses and claims against Schindler. Accordingly, Otis argues, if it cannot get the documents sought from Aufzüge, Otis's' ability to establish secondary considerations of non-obviousness of the patent will be impaired and, therefore, Otis will not be able to fully and adequately defend against Schindler's claims of obviousness.  The additional sanctions of taking as established the secondary considerations of non-obviousness, Otis therefore argues, are necessary to enable Otis to defend against that contention.

Schindler argues that the Court should not take as established the secondary considerations of non-obviousness because it would impose prejudice upon Schindler.  However, Schindler has offered no way to avoid the alleged prejudice to Schindler except by imposing prejudice on Otis.  Aufzüge proposes that the Court preclude it from asserting any defenses against Otis's claims of copying, commercial success, and failure of others.  However, this

proposed sanction would be ineffective to remedy the prejudice imposed upon Otis since it ignores the fact that the documents Aufzüge has refused to produce are necessary to Otis to defend against the claims asserted by Schindler – and not only to assert claims against Aufzüge. Furthermore, Aufzüge's proposed sanction is rendered moot by the Court's recommendation that default be entered against Aufzüge. Precluding Aufzüge from doing anything is insufficient to remedy the prejudice caused Otis in this case. Accordingly, the Court must look to additional sanctions to resolve the prejudice caused to Otis, including the taking of facts as established.

In determining whether the taking of facts as established is an appropriate sanction for a discovery violation, the Third Circuit has applied a balancing test, which considers "(1) culpability (including willfulness and bad faith, and whether the client was responsible or solely the attorney); (2) prejudice; and (3) whether lesser sanctions would have been effective." *Spear v. Commissioner*, 41 F.3d 103, 111 (3d Cir. 1994). In its analysis of the balancing test, the court uses a sliding scale, and "the harsher the sanction being imposed, the more the balance will have to be against the party being sanctioned to justify the sanction." *Id.*

1.    Culpability

The District of New Jersey has found the culpability requirement to be met where the failure to produce documents for discovery was deliberate and the documents were willfully concealed. *See Wachtel v. Healthnet, Inc.*, 239 F.R.D. 81, 103 (D.N.J. 2006). As stated above, Aufzüge has deliberately refused to produce documents since April 2010. Aufzüge also deliberately violated this Court's Order without any valid reason or justification. In addition, as stated above, the fact that Aufzüge's counsel has sought to withdraw demonstrates that the refusal to produce the documents stems from Aufzüge personally, and not its counsel.

2.    Prejudice

The District of New Jersey has found prejudice to a moving party where a party's failure to produce documents has impeded the "party's ability to prepare effectively a full and complete trial strategy." *Bowers v. NCAA*, 564 F. Supp. 2d 322, 333 (D.N.J. 2008) (quoting *Ware*, 322 F.3d 218 at 222).   Furthermore, the court has found prejudice where a party's willful non-disclosure provided the party with a "clear litigation advantage." *Wachtel*, 239 F.R.D. at 104.  In this case, Aufzüge is withholding the documents that have the potential to establish Otis's defenses to Schindler's claims.  This failure to produce denies Otis the documents necessary to effectively prepare its trial strategy and thereby strongly prejudices Otis. Moreover, although Schindler contends that it cannot compel Aufzüge to produce ordered documents, the willful non-disclosure on the part of Aufzüge benefits Schindler directly by ensuring that Otis does not obtain documents which could enable it to establish its defenses.

Schindler argues that because the prejudice imposed upon it by Otis's proposed sanctions greatly outweighs the prejudice to Otis caused by Aufzüge's failure to comply with the Order, the sanctions should not be imposed.  In support of this argument, Schindler relies on *Remington Prods., Inc. v. N. Am. Philips Corp.*, 107 F.R.D. 642 (D. Conn. 1985)  Notwithstanding the fact that *Remington* is not precedential in this case, more importantly, *Remington* does not support Schindler's argument.

First, Otis incorrectly presupposes that the Court in *Remington* weighed prejudice on all parties equally.  In fact, the Court appears to apply a two step analysis of prejudice in order to determine what type of sanctions to impose.  *Id.*  The Court first looked to the prejudice suffered by the plaintiff to ensure that the sanction imposed negated any prejudice the plaintiff suffered. *Id.* ("[the sanction] must negate any prejudice that Remington would suffer from a failure of

compliance.") Only after the Court completed this first step did it then look to the prejudice to other parties. *Id.* Furthermore, it stated that the prejudice to the other parties should be limited <u>to the extent possible</u> – suggesting that the prejudice need not be entirely avoided. *Id.* ("Secondly, the sanction should be designed, <u>insofar as possible</u>, so that it will not adversely affect any party to the action, other than [the sanctioned party]") (emphasis added). The Court in *Remington* appeared to place more weight on the prejudice caused to the party seeking the documents rather than on the other potential innocent co-defendants.

Second, the Court in *Remington* sought to craft sanctions to avoid prejudice on two co-defendants who the Court found to be entirely innocent. *Id.* at 657. The Court believed the two parties were innocent because they each had provided discovery to Remington. *Id.* at 655-56. ("Both of these defendants have provided discovery to Remington. Accordingly, any sanction against N.V. Philips must be crafted as nearly as possible to avoid affecting NAPC and Schick."). While the Court did not specifically describe the nature of the discovery provided by these two parties, it appears that it related to Remington's claims against NAPC and Schick. As such, Remington was not left in a position where it had no documents and/or information to prosecute its claims against these defendants. The situation is very different in this case. Unlike in *Remington,* Schindler has not provided documents and/or information that are directly relevant to Otis's defenses of non-obviousness, but rather has pointed the finger at Aufzüge and stated that Aufzüge possesses the requested documents and/or information. Accordingly, while not necessarily complicit in Aufzüge's violation of the Order, Schindler stands to gain significantly if the documents are not produced.[8] It is therefore not an (entirely) innocent bystander in this

---

[8] Furthermore, one could go as far as concluding that Schindler is not entirely innocent on the mere basis that it is a sister company of Aufzüge which, according to Otis, had significant contact and ties with Aufzüge in connection with the development of the elevator belts. This is further supported by the fact that Schindler has been represented at all times in this matter (until Aufzüge's counsel filed its motion to withdraw) by the same attorneys as Aufzüge.

matter.   Therefore, while prejudice to Schindler should be considered, the Court's primary concern here is the prejudice imposed upon Otis, which it finds to be significant.

### 3.   Whether Lesser Sanctions Are Available and Will be Effective

"The harsher the sanction being imposed, the more the balance will have to be against the party being sanctioned to justify the sanction." *Spear*, 41 F.3d at 111.   As shown above, the circumstances of Aufzüge's blatant violation of the Order, and the concomitant prejudice imposed upon Otis as result of this violation weighs heavily in favor of imposing severe sanctions on Aufzüge.   Furthermore, as stated above, the Court believes that imposing sanctions in the form of attorneys' fees and entering default against Aufzüge will not be sufficient to cure the prejudice caused to Otis.   Accordingly, additional sanctions are necessary.   However, the Court is mindful of Schindler's interests and the potential prejudice imposed upon it if the Court were to take the secondary considerations of non-obviousness as established.

As such, in order to address each of these concerns, the Court finds that the proper sanction to be imposed, in addition to default against Aufzüge, is the entry of a finding that the secondary considerations of non-obviousness, that is, copying, failure of others, and commercial success, are presumed established, subject to rebuttal by Schindler with evidence and/or documents in the possession of all parties.[9]   This additional sanction will negate the prejudice imposed upon Otis in being unable to obtain documents relevant to the establishment of these indicia, while mitigating the prejudice imposed upon Schindler by still permitting Schindler to

---

While the Court is making no finding in this regard, it would be surprising that two parties indirectly affiliated, and perhaps ultimately controlled by the same corporate parent, who are represented by same counsel in the same litigation against which similar claims have been asserted would not communicate and/or share litigation strategy.

[9] The Court believes that Otis has established sufficient factual basis that the documents withheld by Aufzüge would be relevant to establishment of copying, commercial success, and failure of others.   Otis's revised proposed Order (Proposed Order, ECF No. 187-2) also resolves Schindler's concerns regarding the identification of the specific Otis belts at issue.

establish that these considerations do not exist or to prove that Aufzüge's conduct (if the secondary considerations are not rebutted) has no factual or legal nexus to Schindler's conduct as it relates to the claims and defenses in this action.

In creating a rebuttable presumption rather than simply taking the facts as established, the Court is applying a lesser sanction than may be warranted. Furthermore, Aufzüge's proposed sanction that would instead preclude it from establishing defenses to Otis's claims of copying, commercial success, and failure of others would be ineffective since it would not diffuse the prejudice to Otis that results from Aufzüge's non-disclosure, nor would it further the objective of moving the litigation forward.[10] Thus, a rebuttable presumption that facts have been established is the least restrictive sanction available in these circumstances.

## C.   REQUEST FOR PERMANENT INJUNCTION

While the Court is sympathetic to the idea that an injunction should be issued to prohibit Aufzüge from engaging in conduct which it has refused to fairly litigate, there are two problems with Otis's position. First, there has been no ultimate finding of infringement and, therefore, a permanent injunction is inappropriate at this time. Second, as noted by Aufzüge, none of the factors required to permit an injunction have been properly litigated and none of the findings required by those factors have been made by a Court. Accordingly, the Court declines to recommend that a permanent injunction be issued at this time. That issue should be resolved in context with the ultimate resolution, by verdict, settlement, or dispositive motion, between Schindler and Otis.

---

[10] Aufzüge also argues that the secondary considerations cannot be taken as established because Otis has failed to adduce sufficient evidence to show copying, commercial success, or failure of others. However, taking that argument to its logical end, facts would never be taken as established for failure to produce relevant discovery. Otis cannot establish copying, commercial success, or failure of others because Aufzüge refuses to produce evidence Otis needs in order to do so.

## IV.   **CONCLUSION**

For the foregoing reasons, the Court respectfully recommends that, if Aufzüge does not produce all documents required by the Order within twenty (20) days of the effective date of the District Court's order accepting and approving the Recommendations:

(1)    Default be entered against Aufzüge.

(2)    The following facts be presumed established subject to rebuttal by Schindler with evidence and/or documents in the possession of all parties:

a.    Aufzüge copied Otis's invention claimed in U.S. Patent No. 6,739,433, as embodied in the Otis Gen2 elevator belts with specification numbers AAA717P1, AAA717W1, and/or AAA717R1, in order to develop the Gates Tension Member (including the Gates tension member with specification number LL MV 90-07) to lift an elevator car in an elevator system.

b.    The elevator systems using belts sold by Aufzüge and other Schindler European affiliates are commercially successful due to their use of the belts claimed in the '433 patent instead of round ropes to provide lifting force to the elevator car.

c.    Aufzüge tried and failed to design alternatives to the '433 patent inventions, including failing to design elevator belts with alternative cord configurations and failing to develop non-belted elevator systems that compete with belted elevator systems.

JOSEPH A. DICKSON, U.S.M.J.

cc:    Dennis M. Cavanaugh, U.S.D.J.